**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CITY OF SYRACUSE,**

                  **Plaintiff,**

         **v.**                                        **5:00-CV-278**
                                                        **(Lead)**
**AMERICAN UNDERGROUND ENGINEERING, INC.**    **5:99-CV-1127**
**and LONG MANAGEMENT, INC.**                     **(Member)**
                                                         **(FJS/DEP)**

                  **Defendants.**
_____
_____

**LONG MANAGEMENT, INC.,**

                  **Third-Party Plaintiff,**

         **v.**

**AMERICAN UNDERGROUND ENGINEERING, INC.,**

                  **Third-Party Defendant.**
_____
_____

**AMERICAN UNDERGROUND ENGINEERING, INC.**

                  **Fourth-Party Plaintiff,**

         **v.**

**CITY OF SYRACUSE and JOHN P. STOPEN ENGINEERING, P.C.,**

                  **Fourth-Party Defendants.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **CITY OF SYRACUSE**<br>**CORPORATION COUNSEL**<br>City Hall, Room 301<br>233 East Washington Street<br>Syracuse, New York 13202 | JOSEPH F. BERGH, ESQ. |
| **CAMARDO LAW FIRM P.C.**<br>127 Genesee Street<br>Auburn, New York 13021<br>Attorneys for American Underground<br>Engineering, Inc. | JOSEPH A. CAMARDO, JR., ESQ. |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court is Defendant American Underground Engineering, Inc.'s ("AUG") motion for partial summary judgment[1] with respect to its counterclaims for breach of contract against Plaintiff City of Syracuse ("Plaintiff City").

### II. BACKGROUND

Plaintiff City commenced this action in New York State Supreme Court against Defendant AUE and United States Fidelity & Guaranty Co. ("USF&G") on January 24, 2000, asserting, among other things, claims for breach of contract, violation of the New York Lien Law and loss of revenue relating to a City public works project for the rehabilitation of the MONY Plaza garage ("Project").

---

[1] Defendant AUE's motion is for partial summary judgment because it seeks this relief on the issue of liability but not on the issue of damages.

On February 14, 2000, Defendant AUE removed this action to this Court based on diversity of citizenship. *See* Dkt. No. 1. Defendant AUE interposed an answer and asserted three counterclaims[2] against Plaintiff City for breach of contract.[3] It is these counterclaims that are the subject of the pending motion.

### III. DISCUSSION

A.   **Summary judgment standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that

---

[2] In its "Revised Amended Answer, Counterclaim, and Fourth-Party Claim," Defendant AUE asserts three counterclaims for breach of contract against Plaintiff City, each of which seeks $6,242.312.75 in damages. In its first counterclaim, Defendant AUE contends that, "in wrongfully terminating AUE's contract, the City has materially breached its contract with AUE . . . [and,] [t]herefore, AUE is entitled to have its contract with the City rescinded, and be awarded damages . . . ." *See* Defendant AUE's Revised Answer at ¶ 52. In its second counterclaim, Defendant AUE argues that, "[b]y its actions and inactions, the City of Syracuse breached its contract with AUE, causing AUE to be damaged." *See id.* at ¶ 54.

Finally, in its third counterclaim, Defendant AUE claims that "the City of Syracuse made numerous changes and alterations to the contract plans and specifications, the performance of which involved a greater amount of services than was contemplated by the parties at the time the contract was entered into, or expressed in the terms of the Contract." *See id.* at ¶ 58. Defendant AUE contends that, because it has performed extra work and additional services resulting from Plaintiff City's changes and alterations, from which Plaintiff City benefitted, Defendant AUE is entitled to an award of damages in the sum of $6,242,312.75, the value of this extra work and additional services. *See id.* at ¶¶ 59-61.

[3] In a related action involving the failure to pay benefits into a labor union pension fund, Defendant AUE brought a fourth-party action against the City of Syracuse and the City's Engineer on the Project, John P. Stopen Engineering Partnership ("Stopen"). The Court consolidated these two actions.

the moving part is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The party moving for summary judgment bears the initial burden of demonstrating that there is no genuine dispute about any material fact to be decided with respect to any essential element of the claim at issue; failure to meet this burden warrants denial of the motion. *See id.* at 250 n.4. If the moving party meets its initial burden, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250.

Finally, when deciding a motion for summary judgment, a court must resolve all ambiguities and draw all reasonable inferences from the facts in a light most favorable to the nonmoving party. *See Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005); *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." *Treglia v. Town of Manlius*, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); *see also Anderson*, 477 U.S. at 250 (holding that summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

**B.     Defendant AUE's motion for summary judgment**

Even a cursory review of the parties' submissions demonstrates that there are multiple issues of material fact that preclude the Court from granting Defendant AUE's motion. In fact, as

their Statements of Material Facts demonstrate, the parties agree about very few facts. *See, generally,* Defendant AUE's Statement of Material Facts; Plaintiff City's Response to Defendant AUE's Statement of Material Facts; Defendant AUE's Reply to Plaintiff City's Statement of Additional Material Facts. It appears that the only thing about which the parties completely agree is that they entered into a contract and that one of them breached that contract.[4] However, the parties do not agree about which of them breached that contract, nor do they agree about the nature or cause of that breach.

Defendant AUE argues that Plaintiff City breached the contract by issuing defective plans and specifications. Defendant AUE further claims that, "in making its bid and in subsequently performing on the contract, [it] had . . . the right to rely on the completeness and accuracy of the plans and specifications that [Plaintiff City] provided . . . ." *See* Defendant AUE's Memorandum of Law at 17. Defendant AUE contends, however, that, because the plans and specifications contained in the Project Manual were neither complete nor accurate, Plaintiff City was clearly in breach of the implied warranty of the adequacy of specifications. *See id.* Finally, Defendant AUE asserts that, "[b]ecause [Plaintiff] City incorporated improvements, modifications, corrections and changes into the re-let Project specifications, [Defendant] AUE may use these actions by [Plaintiff] City to prove [that Plaintiff] City did this to improve the original design." *See id.* at 17-18.

---

[4] Specifically, the parties agree that Plaintiff City awarded and entered into a contract with Defendant AUE to perform the general construction work, which included hydrodemolition work and other work, on the Project, including the base bid work and alternates 3 & 5 for a fixed price of $5,832, 739.00 and a schedule of unit prices for various work expected to be performed under the contract pursuant to the project manual, including addendums 1-4, that Plaintiff provided to Defendant AUE. *See* Defendant AUE's Statement of Material Facts at ¶ 1; Plaintiff City's Response at ¶ 1.

To the contrary, Plaintiff City argues that, although Defendant AUE has identified various alleged design deficiencies in the contract drawings and specifications for the Project, it did not attach all of the contract drawings or a complete set of specifications nor did it submit an affidavit or other sworn testimony from a licensed architect or engineer identifying the deficiencies in the drawings or specifications. *See* Plaintiff City's Memorandum of Law at 6. Furthermore, Plaintiff City contends that, although Defendant AUE's entire argument is

> premised upon the theory that any new drawings or specifications found in the Crane-Hogan contract are because of alleged design deficiencies, . . . [Defendant AUE] offer[s] no proof, other than [its] word, that the changes [it] cite[s] to are due to design deficiencies, rather than changes due to conditions actually encountered out at the Project that could not have been known until the work commenced.

*See id.* at 7.

Finally, Plaintiff City asserts that, in response to Defendant AUE's identification of several areas it alleges show defective or deficient design, Plaintiff City "has submitted . . . affidavits from its construction inspectors and project coordinator on the Project [to] rebut [Defendant] AUE's . . . claim of design deficiencies." *See id.* at 10 (citation omitted). Plaintiff City contends that these affidavits "show [either] that the contract drawings or specifications for the Project were not defective" or "that a change in the specifications or drawings for the Crane-Hogan contract was not to correct a design defect in the original specifications or drawings" and, thus, demonstrate that Defendant AUE breached its contract with Plaintiff City. *See id.*

Although, as noted, the parties have identified several aspects of their contractual

-6-

relationship about which they disagree, and about which material issues of fact exist,[5] the Court will address one specific example, which concerns the "Montgomery Street Beam Work" to demonstrate why summary judgment is not appropriate. Defendant AUE asserts that, on December 4, 1998, it advised Plaintiff City that the Montgomery Street beam work, as designed, presented cathodic protection system continuity problems and made recommendations to Plaintiff City to correct this design deficiency. *See* Defendant AUE's Memorandum of Law at 5-6. Defendant AUE contends that, as of July 15, 1999, Plaintiff City still had not resolved this problem. *See id.* at 6. On August 16, 2000, Plaintiff City's engineer, Stopen, produced the final design repair detail drawing, JD-1, for work on the Montgomery Street beam to address both the cathodic deficiencies and the structural deficiencies. Defendant AUE claims that this design was not adequate for the beam work. *See id.*

According to Defendant AUE, on August 29, 2000, after Defendant AUE was no longer working at the site, Crane-Hogan, to whom Plaintiff City had re-let the contract, "furnished a sketch to Glenn Mannerberg, Stopen Engineering, which properly addressed the existing beam conditions and the required methods to make the proper repairs." *See id.* As a result, Defendant AUE argues that Plaintiff City issued Crane-Hogan Change Order No. 2 to allow Crane-Hogan to make additional structural beam repairs and paid Crane-Hogan $64,025 to perform some of the work that Defendant AUE had recommended. *See id.*

Defendant AUE argues that this is one example of how, after it complained and requested

---

[5] The Court notes that, in addition to the specific examples of alleged contractual breaches on which Defendant AUE relies to support its motion, the parties dispute the very fundamental issue of whether Plaintiff City breached the contract by illegally barring Defendant AUE from the Project work site or whether Defendant AUE breached the contract by abandoning that site.

that Plaintiff City correct a design deficiency, Plaintiff City defaulted Defendant AUE, re-let the contract, and corrected the same deficiency, thereby admitting its breach of its contract with Defendant AUE with regard to this issue. *See id.*

In response, Plaintiff City contends that "[n]one of the documents cited in [Defendant AUE's] Statement of Material Facts actually involves the Montgomery Street beam. . . . Rather, [Defendant] AUE . . . cite[s] drawings for a beam that is perpendicular to the Montgomery Street beam but is clearly not the Montgomery Street beam. . . ." *See* Plaintiff City's Memorandum of Law at 6. Specifically, Edward Hall, a Construction Inspector I for Plaintiff City at the time, states that

> [t]he original specifications and drawings for repairing the Montgomery Street [beam] were not defectively designed. . . . Drawing JD-1 that AUE refers to in its Statement of Material Facts involves a different beam than the Montgomery Street beam. The Montgomery Street beam is the beam on the far right of structural drawing S-5 (Exhibit "G") from column lines A to V and then AA to FF. The beam referenced in JD-1 (Appendix pp. 1251-56) is located at column line 34V and 35V, which is adjacent to the Montgomery Street beam, but is not the Montgomery Street beam. The beam in JD-1 has completely different characteristics and functions.

*See* Affidavit of Edward C. Hall, sworn to June 22, 2006, at ¶ 67.

Plaintiff City further asserts that "nothing in drawing JD-1, which [Defendant] AUE . . . cite[s] identifies any design deficiency. Rather Crane-Hogan encountered a condition on **another beam**, not the Montgomery Street beam, that was different than what the drawing showed." *See* Plaintiff City's Memorandum of Law at 7 (emphasis added). Furthermore, Plaintiff City asserts that "[t]his is not a design deficiency, but a situation where the beam's condition did not match the condition that [Plaintiff] City's Engineer, Stopen, expected to be

-8-

there." *See id.* Plaintiff City explains that, "until the beam was exposed, there was no way to know what the actual condition of the beam was. Once Stopen received this information, it revised drawing JD-1 to reflect the actual condition. Adjustments to work on a construction project are not an uncommon occurrence." *See id.*

As Defendant AUE correctly asserts, the law is well-established that "'[d]etailed design specifications contain an implied warranty that if they are followed, an acceptable result will be produced.'" *Hawaiian Bitumuls & Paving v. United States*, 26 Cl. Ct. 1234, 1240 (Cl. Ct. 1992) (quoting *Stuyvesant Dredging Co. v. United States*, 834 F.2d 1576, 1582 (Fed. Cir. 1987) (citing *United States v. Spearin*, 248 U.S. 132, 39 S. Ct. 59, 63 L. Ed. 166 (1918))). It is equally well-settled that "[if] the government breaches its implied warranty of adequate specifications, it is responsible for plaintiff's extra costs in performing under the defective specifications." *Id.* (citing *Austin Co. v. United States*, 161 Ct. Cl. 76, 81, 314 F.2d 518, *cert. denied*, 375 U.S. 830, 84 S. Ct. 75, 11 L. Ed. 2d 62 (1963)).

Ultimately, if Defendant AUE is able to prove that Plaintiff City's design specifications were defective, Defendant AUE may prevail on its breach-of-contract counterclaims under this legal theory. However, as noted above, there are issues of fact regarding whether Defendant AUE's inability to complete the contract was the result of defective design specifications or its failure to adhere to what Plaintiff City asserts were the contract's adequate drawings and specifications. Therefore, viewing the facts in the light most favorable to Plaintiff City and drawing all reasonable inferences from those facts in Plaintiff City's favor, as it must when considering a motion for summary judgment, the Court concludes that it cannot say, as a matter of law, that a reasonable trier of fact could not resolve Defendant AUE's counterclaims against

Plaintiff City in Plaintiff City's favor.

## IV. CONCLUSION

Accordingly, after reviewing the entire file in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant AUE's motion for partial summary judgment on the issue of liability related to its breach-of-contract counterclaims against Plaintiff City is **DENIED**; and the Court further

**ORDERS** that this matter is referred to Magistrate Judge Peebles for all further pretrial matters.

**IT IS SO ORDERED.**

Dated: January 14, 2009
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge