UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

AMERICAN UNDERGROUND
ENGINEERING, INC.,

                        **Plaintiff**,

          v.                                    5:00-CV-278
                                                     (FJS/DEP)

CITY OF SYRACUSE,

                        **Defendant.**
_____

**APPEARANCES**                                      **OF COUNSEL**

**CAMARDO LAW FIRM, PC**              **JOSEPH A. CAMARDO, JR., ESQ.**
127 Genesee Street                          **KEVIN M. COX, ESQ.**
Auburn, New York 13021
Attorneys for Plaintiff

**CITY OF SYRACUSE CORPORATION**    **JOSEPH F. BERGH, ESQ.**
**COUNSEL**                                    **JESSICA M. McKEE, ESQ.**
233 East Washington Street
Room 301 City Hall
Syracuse, New York 13202
Attorneys for Defendant

**HANCOCK & ESTABROOK, LLP**         **JOHN G. POWERS, ESQ.**
1500 AXA Tower I
100 Madison Street
Syracuse, New York 13221-4976
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

In June 2010, this Court presided over an eight-day jury trial for breach of contract between Plaintiff, the lead contractor for the construction of a parking garage in Syracuse, and Defendant, the

City of Syracuse. At the conclusion of the trial, the jury found that Plaintiff had proved that Defendant had breached the contract, that the breach was sufficiently material as to defeat the contract's purpose, and that Plaintiff was entitled to damages as a result of that breach. *See* Verdict Form at 1-2. The jury awarded Plaintiff $7,306,021.64 in quantum meruit damages.[1] *See id*. at 2.

Currently before the Court is Defendant City of Syracuse's post-trial motion for judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50(b), or, alternatively, for a new trial pursuant to Federal Rule of Civil Procedure 59, or, alternatively, for separate findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1). In the alternative, Defendant also moves for remittitur of damages.

## II. DISCUSSION

**A.    Rule 50(b) standard**

Federal Rule of Civil Procedure 50(b) provides, in relevant part, that,

> [i]f the court does not grant a motion for judgment as a matter of law made under Rule 50(a), the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion. No later than 28 days after the entry of judgment - or if the motion addresses a jury issue not decided by a verdict, no later than 28 days after the jury was discharged - the movant may file a renewed motion for judgment as a matter of law and may include an alternative or joint request for a new trial under Rule 59. . . .

Fed. R. Civ. P. 50(b).

---

[1] To arrive at this number, the jury concluded that Plaintiff's costs were $10,759,804.50 and that its overhead expenses were fifteen percent, an additional $1,613,970.68, for a total of $12,373,775.18. The jury subtracted from that number the amount that Defendant had already paid Plaintiff, $5,067,753.54, thereby resulting in a final award of $7,306,021.64.

When considering a Rule 50 motion, courts "'"cannot assess the weight of conflicting evidence, pass on the credibility of the witnesses, or substitute its judgment for that of the jury."'" *Black v. Finantra Capital, Inc.*, 418 F.3d 203, 209 (2d Cir. 2005) (quotation omitted). In addition, courts "'must view the evidence in a light most favorable to the non-movant and grant that party every reasonable inference that the jury might have drawn in its favor.'" *Mitrione ex rel. Brittany v. Monroe*, No. 1:02-CV-0526, 2010 WL 1539719, *4 (N.D.N.Y. Apr. 19, 2010) (granting in part and denying in part a post-trial 50(b) motion) (quoting *Merrill Lynch Interfunding, Inc. v. Argent*, 155 F.3d 113, 120 (2d Cir. 1998)).

The Second Circuit has held that courts should only grant judgment as a matter of law where "'(1) there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or (2) there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [persons] could not arrive at a verdict against [it].'" *Benson v. Yaeger*, No. 05-CV-784S, 2010 WL 4703419, *2 (W.D.N.Y. Nov. 19, 2010) (quoting *Galdieri-Ambrosini* [*v. Nat'l Realty & Dev. Corp.*], 136 F.3d [276,] 289 [(2d Cir. 1998)]).

**B.    Rule 59 standard**

Federal Rule of Civil Procedure 59(a) has a less stringent standard than Rule 50 in two significant respects: (1) courts may grant a new trial under Rule 59(a) "'even if there is substantial evidence supporting the jury's verdict,'" and (2) a trial court "'is free to weigh the evidence . . . and need not view it in the light most favorable to the verdict winner.'" *Manley v. AmBase Corp.*, 337 F.3d 237, 244-45 (2d Cir. 2003) (quotation omitted). Nevertheless, for a district court to order a

new trial under Rule 59(a), it must conclude that the jury reached a seriously erroneous result or that the jury's verdict was contrary to the weight of the evidence. *See id*. at 245 (quotation omitted).

Finally, "[w]hen a party moves for a new trial 'on the ground that the amount of damages awarded is excessive, a court may require a plaintiff to elect between remitting a specified amount of the damage award, or submitting to a new trial.'" *Malmsteen v. Berdon, LLP*, 595 F. Supp. 2d 299, 304 (S.D.N.Y. 2009) (quotation omitted).

C. **Defendant's basis for its Rule 50 and Rule 59 motions**

Defendant argues that Plaintiff could not recover damages on a quantum meruit basis because Plaintiff already had a remedy in the form of contract damages. *See* Defendant's Memorandum at 8. Defendant further contends that, since Plaintiff, in its summary judgment motion, chose to proceed under a breach of contract theory, Plaintiff could not pursue a quantum meruit theory at the time of trial. *See id.* 12. Defendant reasons that, although a party may initially allege claims under inconsistent theories of recovery, it must eventually choose one theory over the other. *See id*. at 11.

*1. Defendant's breach and the propriety of quasi-contract relief*

In the usual course, courts do not allow claims grounded in quasi-contract where a valid agreement exists between the parties. *See Integral Control Sys. Corp. v. Consol. Edison Co. of N.Y., Inc.*, 990 F. Supp. 295, 303 (S.D.N.Y. 1998) (quotation omitted); *see also Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.*, 70 N.Y.2d 382, 388 (1987) (citations omitted). Where, however, one party has wrongfully terminated the agreement by committing a material breach, "quantum meruit

[is] an appropriate measure of damages[.]"  *MCK Bldg. Assocs., Inc. v. St. Lawrence Univ.*, 301 A.D.2d 726, 727 (3d Dep't 2003).  Failure to make payment is one such type of terminating breach.  *See Franklin Pavkov Constr. Co. v. Ultra Roof, Inc.* 51 F. Supp. 2d 204, 215 (N.D.N.Y. 1999) (citations omitted); *see also Paterno & Sons, Inc. v. Town of New Windsor*, 43 A.D.2d 863, 864 (2d Dep't 1974) (citations omitted).  Inordinate delays also constitute a breach that will entitle the non-breaching party to "'disregard the contract figures and proceed on a quantum meruit basis.'"  *Port Chester Elec. Constr. Corp. v. HBE Corp.*, 782 F. Supp. 837, 845 (S.D.N.Y. 1991) (quotation and other citation omitted), *rev'd on other grounds*, 978 F.2d 820 (2d Cir. 1992).  As a consequence, once an agreement has been wrongfully terminated, the non-breaching party may elect to pursue quantum meruit damages.  *See Franklin Pavkov Constr. Co.*, 51 F. Supp. 2d at 219 (citations omitted).  Where a party seeks quantum meruit damages for the premature wrongful termination of a construction contract, courts calculate the damages "by considering the 'actual job costs plus allowance for overhead and profit minus amounts paid.'"  *Id*. (quotation omitted).

Here, quantum meruit relief is proper because Plaintiff presented evidence that Defendant breached the contract by failing to pay Plaintiff for work it performed in accordance with the contract's terms.  *See* Exhibits P-156, P-207; Trial Transcript ("Tr.") Vol. II, pp. 131, 144-45, 188-201, 205-07, 209-11, 239-41; Tr. Vol. III, pp. 281-83, 311, 320-24, 327-28, 341; Tr. Vol. IV, pp. 555-57, 576, 593, 608; Tr. Vol. V, pp. 688-96, 702-07, 741-42, 749.  Plaintiff also presented evidence that Defendant failed to pay Payment Application #14 and did not allow Plaintiff to submit Payment Application #15.  *See* Tr. Vol. II, pp. 131, 205-07; Tr. Vol. III, pp. 311, 327; Tr. Vol. V, p. 707; Tr. Vol. III, pp. 282-83, 327-28.  Plaintiff also demonstrated that Defendant did not pay for the extra work Plaintiff performed.  *See* Exhibit P-207; Tr. Vol. II, pp. 144-45, 152-57, 239-41; Tr. Vol.

III, pp. 281-82, 320-24, 341; Tr. Vol. IV, pp. 555-57, 576, 593, 608; Tr. Vol. V, pp. 688-98, 702-07, 741-42, 749. Plaintiff further presented evidence demonstrating that Defendant barred Plaintiff from the work site, causing delay, *see* Tr. Vol. III, p. 327; Tr. Vol. IV, pp. 470-76, 485-86, and that this ultimately prevented the completion of the project, *see* Tr. Vol. II, pp. 201-05; Tr. Vol. IV, pp. 470-76, 485-86; Tr. Vol. V, pp. 708-10, 745, 748.

This evidence supports the jury's conclusion that Defendant materially breached its contract with Plaintiff. As a consequence of such a breach, Plaintiff is entitled to quantum meruit damages. It cannot be said that the jury in this case reached a seriously erroneous result when it determined that Plaintiff should receive quantum meruit damages. Accordingly, the Court denies Defendant's motions for a judgment as a matter of law and for a new trial with respect to this issue.

### *2. Election of remedies*

Where a plaintiff "seek[s] recovery on alternative theories, [it] must make an election of remedies at trial . . . or upon submission of a motion for summary judgment . . . ." *Unisys Corp. v. Hercules Inc.*, 224 A.D.2d 365, 367 (1st Dep't 1996) (internal citations omitted). However, "[w]here . . . a bona fide dispute as to the existence or application of a contract is demonstrated, a plaintiff generally 'will not be required to elect [its] remedies.'" *Wilmoth v. Sandor*, 259 A.D.2d 252, 254 (1st Dep't 1999) (quotation omitted). Regarding election of remedies and motions for summary judgment, courts have held that "[t]he grant of summary judgment being the procedural equivalent of a trial, . . . , the movant is required to elect the basis upon which judgment is sought." *Id*. (internal citation omitted).

The Court finds that Plaintiff's failure to choose between contract and quantum meruit

damages in its motion for summary judgment did not preclude it from choosing to pursue quantum meruit damages at trial for at least two reasons. First, Plaintiff's motion for summary judgment addressed the issue of Defendant's liability only. Since that motion did not contain a discussion of damages, Plaintiff did not, as Defendant argues, make any implicit admissions regarding the nonexistence of facts regarding damages. Furthermore, this case concerns a bona fide dispute regarding the existence and/or application of a contract, so Plaintiff was never required to elect its remedy. *See id*. Accordingly, the Court denies Defendant's motion with respect to this issue.

### D.   Rule 52(a)(1)

Defendant argues that the jury's verdict regarding contract rescission and quantum meruit damages was advisory and that the Court is not bound by its findings because advisory verdicts are not binding on equitable claims, and Defendant characterizes Plaintiff's claim as equitable. *See* Defendant's Memorandum at 6. Defendant contends that, since the verdict was advisory, the Court is free to develop separate findings of fact and conclusions of law. *See id*.

Courts have held that "rescission is an equitable remedy which will not be granted unless [the] [p]laintiff[] lack[s] an adequate remedy at law." *Mina Inv. Holdings Ltd. v. Lefkowitz*, 16 F. Supp. 2d 355, 362 (S.D.N.Y. 1998) (citations omitted); *Faden Bayes Corp. v. Ford Motor Co.*, No. 97 CIV. 1867, 1997 WL 426100, *2 (S.D.N.Y. July 30, 1997) (citation omitted). Moreover, this circuit has found that actions for quantum meruit damages should be tried before a jury. *See, e.g., Scott v. Rosenthal*, 53 Fed. Appx. 137, 142 (2d Cir. 2002) (affirming jury award in quantum meruit).

In the instant matter, the jury properly decided Plaintiff's claim for rescission.[2] First, even if this were an equitable issue, the jury properly decided it because both parties agreed to a jury trial. The Court never notified either party that the jury would function in an advisory capacity. In addition, Defendant never objected to the use of a jury to determine Plaintiff's relief until after the verdict.

Further, Plaintiff lacked an adequate remedy at law in this situation. Although the contract discusses default, it does not provide for quantum meruit damages in the event of Defendant's material breach. As a consequence, Plaintiff's remedy at law is not adequate; and, to fully recoup the losses it sustained during this project, Plaintiff must seek equitable rescission, as well as quantum meruit damages.

For all of these reasons, Plaintiff had a right to a jury trial in this matter. Accordingly, the Court finds that the jury's verdict was not advisory and denies Defendant's motion for separate findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1).

**E.     Legal framework of remittitur**

The Second Circuit has found remittitur appropriate in at least two situations: "(1) where the court can identify an error that caused the jury to include in the verdict a quantifiable amount that should be stricken, . . . and (2) more generally, where the award is 'intrinsically excessive' in the sense of being greater than the amount a reasonable jury could have awarded, although the surplus cannot be ascribed to a particular, quantifiable error . . . ." *Shu-Tao Lin v. McDonnell Douglas*

---

[2] Defendant improperly relies on *Merex A.G. v. Fairchild Weston Sys., Inc.*, 29 F.3d 821 (2d Cir. 1994), for the proposition that this action is one in equity. The court in *Merex* held that promissory estoppel was an equitable claim, but it did not discuss quantum meruit.

*Corp.*, 742 F.2d 45, 49 (2d Cir. 1984) (internal citations omitted).

The Court has already explained why quantum meruit damages are appropriate. In light of that analysis, the Court finds that Defendant's call for contract damages is once again unavailing. However, for the reasons to follow, the Court finds that remittitur is appropriate in this case; and, accordingly, the Court will require Plaintiff to choose between accepting a reduced award and a new trial.

### F.  Remittitur analysis

Defendant identified five possible areas where the jury may have erred in calculating damages.

#### 1. Possible double-counted profits

With regard to profits, the jury appears to have double-counted; and, under *Shu-Tao Lin*, it is appropriate for the Court to correct this error. Plaintiff's spreadsheet indicates fifteen percent profit and overhead as part of its total expenses. The jury, on the verdict form, also awarded fifteen percent for profit and overhead expenses, giving Plaintiff an additional $1,613,970.68. Notably, Plaintiff does not dispute that the jury awarded it thirty percent profit and overhead. Instead, Plaintiff attempts to explain the propriety of such a high profit award. However, Plaintiff's argument is at odds with its posture during trial. Throughout the trial, Plaintiff indicated that it expected to make approximately fifteen percent for profit and overhead on this contract. *See* Tr. Vol. II, p. 209; Tr. Vol. V, pp. 632-34. Plaintiff's accountant, Phillip Wisnewski, testified that a fifteen percent profit rate on such a contract was reasonable and that Plaintiff calculated its lost profits at a rate of fifteen percent. *See* Tr. Vol. V, pp. 632, 634-36. In addition, the contract

contemplates a fifteen percent adjustment for profits where, in Section 00500-3(F), it provides that Change Order payments will include a fifteen percent markup.

The Court finds that Plaintiff only anticipated a fifteen percent markup for profit and overhead and that the jury mistakenly awarded an additional fifteen percent, not realizing that Plaintiff had already built this amount into its expenses. Accordingly, the Court concludes that a remittitur in the amount of $1,613,970.68, which represents the additional fifteen percent in profit and overhead that the jury awarded, is justified. This reduced the overall award from $7,306,021.64 to $5,692,050.96.

### *2. Possible double-counted overhead*

Unlike with the double-counted profits, the Court finds that there is no clear mathematical error regarding overhead. First, Defendant's argument rests on its conception of how Plaintiff should classify its expenses, not on an identifiably incorrect calculation. Next, the jury's award of fifteen percent for profit and overhead appears to be within reasonable and accepted industry standards. *See Aniero Concrete Co., Inc. v. N.Y. City Constr. Auth.*, 308 F. Supp. 2d 164, 207-08 (S.D.N.Y. 2003) (holding that, in a construction contract dispute, it is reasonable to calculate overhead and profit as a percentage of job expenses and, further, that a claim for fifteen percent of costs for profit and overhead is "[not] unreasonable as a matter of law"); *U.S. for use of Tower Masonry, Inc. v. J. Kokolakis Contracting, Inc.*, No. 93 Civ. 6369, 1995 WL 539742, *5 (S.D.N.Y. Sept. 8, 1995) (stating that the plaintiff's requested damages "include[d] a 10% add-on for overhead and 10% for profit, percentages which the Court [found] to be normal and reasonable"). Accordingly, the Court allows this portion of the jury's award to stand.

### *3. Possible double counting of workers comp, triple counting of bond costs*

Again, the Court finds that there is no clear mathematical error here. Defendant's argument rests on its conception of how Plaintiff should classify its expenses, not on an identifiably incorrect calculation. Accordingly, the Court allows this portion of the jury's award to stand.

### *4. Home office overhead*

Defendant argues that home office overhead is generally not recoverable in a construction claim unless the plaintiff can prove that it sustained an increase in home office overhead as a result of a breach. *See* Defendant's Memorandum at 22. Defendant states that, here, Plaintiff included a line for home office overhead in the amount of $379,372.96 but did not attempt to link this amount to Defendant's breach. *See id*. at 23.

Where a defendant breaches a partially completed contract and the plaintiff seeks to recover damages for home office overhead, the contractor "must establish the extent to which its costs were increased by the improper acts" of the defendant. *Berley Indus., Inc. v. City of New York*, 45 N.Y.2d 683, 687 (1978) (citations omitted). Moreover, the plaintiff bears the burden of proving that it did, in fact, sustain an increase in home office overhead. *See Thalle Constr. Co., Inc. v. Whiting-Turner Contracting Co., Inc.*, 39 F.3d 412, 418 (2d Cir. 1994) (reasoning that a plaintiff may recover home office overhead damages if it can demonstrate that delays necessitated overhead costs above what would have otherwise been required) (citation omitted).

Here, Plaintiff has not shown a correlation between Defendant's breach and higher home office overhead costs. Plaintiff did not present documentation of home office overhead costs before and after this contract, nor did it show how, if at all, Defendant's breach required it to incur

unusually large home office overhead expenses.  Instead, Plaintiff merely inserted a line on its damages calculation spreadsheet indicating that it should receive an amount equal to five percent of its expenses for the parking garage project to compensate it for home office overhead.  Based on the record evidence, the Court finds that Plaintiff did not meet its burden of proving that it incurred higher home office overhead costs as a result of Defendant's breach.  The Court further finds that the evidence does not support this portion of the jury's award.  Therefore, the Court concludes that a remittitur in the amount of $379,372.96 is justified.  When combined with the first remittitur, this subtraction reduces the jury's award to $5,312,678.00.

### *5. Possible double and triple-counted payroll*

The Court finds that the evidence to which Plaintiff points supports the jury's award with regard to payroll.  In addition, Defendant has not presented evidence of a mathematical error on the jury's part or financial malfeasance on Plaintiff's part.  Accordingly, the Court allows this part of the jury's award to stand.

### III. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for judgment as a matter of law is **DENIED**; and the Court further

**ORDERS** that Defendant's motion for separate findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a)(1) is **DENIED**; and the Court further

**ORDERS** that, within ten days of the date of this Memorandum-Decision and Order, Plaintiff shall notify the Court and opposing counsel in writing whether it will elect to accept a remittitur that reduces the jury's award to **$5,312,678.00** in damages; and the Court further

**ORDERS** that Defendant's motion for a new trial is **RESERVED** until Plaintiff notifies the Court and opposing counsel of its decision regarding the remittitur. If Plaintiff accepts the remittitur, the Court will amend the judgment accordingly. If Plaintiff rejects the remittitur, the Court will vacate the judgment and set a date for trial on the issue of damages only.

**IT IS SO ORDERED**.

Dated: October 7, 2011
Syracuse, New York

Frederick J. Scullin, Jr.
Senior United States District Court Judge