**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**AMERICAN UNDERGROUND ENGINEERING, INC.**

                            **Plaintiff,**

                  v.                                      5:00-CV-278
                                                                  (FJS/DEP)

**CITY OF SYRACUSE,**

                            **Defendant.**
_____

| **APPEARANCES** | **OF COUNSEL** |
|---|---|
| **CAMARDO LAW FIRM PC** | **JOSEPH A. CAMARDO, JR., ESQ.** |
| 127 Genesee Street | **KEVIN M. COX, ESQ.** |
| Auburn, New York 13021 | |
| Attorneys for Plaintiff | |
| | |
| **HANCOCK ESTABROOK, LLP** | **JOHN G. POWERS, ESQ.** |
| 1500 AXA Tower I | **JAMES P. YOUNGS, ESQ.** |
| 100 Madison Street | |
| Syracuse, New York 13221 | |
| Attorneys for Defendant | |
| | |
| **CITY OF SYRACUSE** | **JOSEPH FRANCIS BERGH, ESQ.** |
| **CORPORATION COUNSEL** | **JAMES P. MCGINTY, ESQ.** |
| 233 East Washington Street | |
| City Hall, Room 301 | |
| Syracuse, New York 13202 | |
| Attorneys for Defendant | |
| | |
| **OFFICE OF THOMAS M.** | **THOMAS M. CARNRIKE, ESQ.** |
| **CARNRIKE** | |
| 202 Clifton Place | |
| Syracuse, New York 13206 | |
| Attorneys for Defendant | |

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Currently before the Court are Defendant City of Syracuse's post-trial motions for a stay of this Court's judgment against it pending appeal and for an order directing entry of an amended judgment pursuant to Federal Rule of Civil Procedure 60(b) ascribing a rate of prejudgment interest lower than nine percent, or, alternatively, for an "indicative ruling" pursuant to Rule 62.1.

### II. BACKGROUND

On July 1, 2010, following an eight-day jury trial for breach of contract between Plaintiff American Underground Engineering, Inc. and Defendant City of Syracuse, the jury returned a verdict in favor of Plaintiff and awarded it $7,306,021.64 in *quantum meruit* damages. Defendant filed a post-trial motion seeking, among other things, a *remittitur* of the jury's award of damages. *See* Dkt. No. 17. In a Memorandum-Decision and Order dated October 11, 2011, the Court determined that a *remittitur* reducing the jury's award from $7,306,021.64 to $5,312,678.00 was justified. *See* Dkt. No. 143. Plaintiff elected to accept the Court's *remittitur*. *See* Dkt. No. 144.

On October 13, 2011, the Court entered judgment in Plaintiff's favor in the amount of the reduced verdict ("Judgment"). *See* Dkt. No. 145. Defendant filed a Notice of Appeal with the United States Court of Appeals for the Second Circuit on October 27, 2011, *see* Dkt. No. 146; but, on February 14, 2012, Defendant filed an unopposed motion to hold its appeal in abeyance pending this Court's ruling on its Rule 60(b) motion. The Second Circuit granted that motion. *See* Dkt. No. 158-2.

Currently before the Court are two post-trial motions that Defendant filed: Defendant's motion to stay enforcement of the Judgment pending the Second Circuit's determination of its appeal, *see* Dkt. No. 147, and Defendant's motion to alter the Judgment to include a calculation of prejudgment interest at a rate lower than nine percent, *see* Dkt. No. 155.

### III. DISCUSSION

**A.    Defendant's motion to stay the Judgment without posting a *supersedeas* bond**

Rule 62(d) permits a stay as of right when an appellant posts a *supersedeas* bond. *See Frommert v. Conkright*, 639 F. Supp. 2d 305, 308 (W.D.N.Y. 2009) (citations omitted). "[T]he court has no discretion to deny the stay itself, but only to fix the amount of (or to waive) the bond." *Id.* (citations omitted).  Under certain circumstances, in its discretion, a court can grant a stay without requiring the posting of a *supersedeas* bond.  However, courts customarily require the appellant to post a bond in cases where a stay of judgment is granted, *see Liberty Mut. Ins. Co. v. Bankers Trust Co.*, 769 F. Supp. 130, 131 (S.D.N.Y. 1991); and it is the moving party's burden to provide specific reasons why a court should depart from this standard, *see Dotson v. City of Syracuse*, No. 5:04-CV-1388, 2011 WL 817499, *23 (N.D.N.Y. Mar. 2, 2011) (quotation omitted).  The *supersedeas* bond is generally for the full amount of the judgment.  *See id.*; *see also Jimico Enters., Inc. v. Lehigh Gas Corp.*, No. 1:07-CV-0578, 2011 WL 4594141, *6 (N.D.N.Y. Sept. 30, 2011) (citations omitted).[1]

Although a district court can order a reduced bond, or no bond at all, in cases such as this

---

[1] Plaintiff argues that the Court should apply the four-part test that Rule 62(c) requires a court to use when considering whether to grant a stay pending appeal.  This four-part test, however, applies *only* to injunctions and other non-monetary judgments and, thus, is not applicable here.

where the judgment creditor's ability to collect on the judgment is reasonably secure,[2] *see Texaco Inc. v. Pennzoil Co.*, 784 F.2d 1133, 1155 (2d Cir. 1986), *rev'd on other grounds*, 481 U.S. 1 (1987) (citation omitted), this case does not present sufficient unique circumstances to warrant the Court's departure from the usual requirement that a court will grant an appellant a stay only upon its posting of a *supersedeas* bond in the full amount of the judgment. *See Pugach v. M & T Mortg. Corp.*, No. 2:05-cv-02498, 2008 WL 2640465, *2 (E.D.N.Y. July 3, 2008).

For these reasons, the Court grants Defendant's motion for a stay of the money judgment pending appeal, but Defendant must post a *supersedeas* bond in the amount of $5,312,678.00 — the full amount of the Judgment — plus an additional 11% as Local Rule 67.1 of the Northern District of New York requires "to cover interest and any damage for delay as may be awarded, plus $250 to cover costs."[3]  N.D.N.Y. L.R. 67.1; *see Dotson*, 2011 WL 817499, at *23.

**B.    Defendant's motion to amend the Judgment to include a calculation of prejudgment interest at a rate lower than nine percent**

New York law governs a party's right to prejudgment interest. *See Lee v. Joseph E.*

---

[2] Plaintiff's ultimate ability to collect on the Judgment appears reasonably secure. Indeed, in a declaration that David J. DelVecchio, the City of Syracuse's Commissioner of Finance and Chief Fiscal Officer, submitted, he stated that "[t]he City is currently solvent and able to satisfy all of its debts and obligations" and that the City "is obligated under State and Local Law to satisfy all final civil judgments entered against it and is authorized by law to appropriate monies to satisfy such obligations." *See* Dkt. No. 147-4, Declaration of David J. DelVecchio dated November 1, 2011, at ¶¶ 4-5. DelVecchio further stated that the City of Syracuse has never failed to satisfy a judgment and "fully intends to satisfy the Judgment entered in this case . . . ." *See id.* at ¶ 7.

[3] In its reply memorandum of law in further support of its motion, Defendant requests that, if the Court determines not to waive the bond requirement under Rule 62(d), "the Court set the amount of the *supersedeas* bond at no more than ten percent (10%) of the principal judgment amount, or some other lesser amount that the Court deems in its discretion is appropriate." *See* Dkt. No. 152 at 5. Defendant has provided no basis for doing so.

*Seagram & Sons, Inc.*, 592 F.2d 39, 41 n.2 (2d Cir. 1979) (citation omitted).  As a preliminary matter, since the Court issued the Judgment on October 13, 2011, and Defendant thereafter filed its Notice of Appeal, the Court must determine whether it retains jurisdiction to decide the instant motion.  "As distinguished from postjudgment interest, prejudgment interest is normally considered to be an element of the judgment itself, viz., relief on the merits . . . ."  *S. Indus. of Clover, Ltd. v. Hardick*, No. 92 CIV. 5750, 1999 WL 76891, *2 (S.D.N.Y. Feb. 8, 1999) (internal citations and footnote omitted).  Unlike a "mistake arising from oversight or omission" that a court can clarify at any time pursuant to Rule 60(a), several courts have held that a district court's failure to specify the prejudgment interest rate or the date from which such interest accrues is not merely a ministerial task and renders the judgment not final, and, thus, not appealable.  *See Student Loan Mktg. Ass'n v. Lipman*, 45 F.3d 173, 175 (7th Cir. 1995) (citations omitted); *United States Sec. & Exch. Comm'n v. Carrillo*, 325 F.3d 1268, 1272-73 (11th Cir. 2003); *Commercial Union Ins. Co. v. Seven Provinces Ins. Co., Ltd.*, 217 F.3d 33, 37 (1st Cir. 2000).  *Cf. O'Neil v. Ponzi*, No. 5:09-CV-0983, 2010 WL 502943, *2 n.2 (N.D.N.Y. Feb. 9, 2010).

The Second Circuit has not addressed the precise issue regarding when and how a district court can amend or correct a judgment that ordered prejudgment interest but failed to fix and calculate such interest.  The Court finds that Rule 60(b) provides the appropriate vehicle for doing so in this case.[4]  In *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1139-40 (2d Cir.

---

[4] Under certain circumstances distinguishable from those in the instant case, Rule 60(a) might otherwise have been the proper Rule 60 provision to amend or correct the Judgment to calculate prejudgment interest.  *See Dudley v. Penn-America Ins. Co.*, 313 F.3d 662, 666 (2d Cir. 2002) (citations omitted).  The first distinguishing feature of this case is that, although the Second Circuit issued an order holding Defendant's appeal in abeyance pending this Court's ruling on Defendant's Rule 60 motion, this does not appear to constitute the requisite "leave" that
(continued...)

1994), where neither party moved for an award of prejudgment interest and the district court's judgments were silent regarding prejudgment interest, the Second Circuit held that "[t]he District Court had authority to amend the Judgments to add pre-decision interest under Rule 60(b)." *Id.* at 1142. However, since Rule 60(b) provides extraordinary relief under exceptional circumstances, the Second Circuit went on to find that the district court did not abuse its discretion declining relief under Rule 60(b). *See id.* at 1147.

Under the circumstances of this case, however, pursuant to Rule 60(b), this Court can properly correct the Judgment so as to include a prejudgment interest calculation. Unlike *Paddington Partners*, the Court's Judgment provided that "[p]rejudgment interest shall be calculated in accordance with New York State law," yet failed to ascribe the interest rate and the date from which such interest shall run. "A party may move for the addition of pre-decision interest to a judgment for a full year under Rule 60(b)(1), or within a 'reasonable time' under Rule 60(b)(6)." *Paddington Partners*, 34 F.3d at 1144. Defendant did not identify under which subsection of Rule 60(b) it brings this motion, but the Court finds that Rule 60(b)(1) is the most appropriate. Rule 60(b)(1) states that a court can relieve a party from a final judgment, order, or proceeding for "mistake, inadvertence, surprise, or excusable neglect . . . ." Fed. R. Civ. P. 60(b)(1). Since this Court clearly intended to provide prejudgment interest that continued to

---

[4](...continued)
Rule 60(a) contemplates. Indeed, Rule 60(a) provides that "[t]he court may correct a clerical mistake or a mistake arising from oversight or omission . . . . But after an appeal has been docketed in the appellate court and while it is pending, such a mistake may be corrected only with the appellate court's leave." Fed. R. Civ. P. 60(a). Second, and more fundamentally, an award of prejudgment interest would not be a mere ministerial act because the Judgment neither set the rate at which the interest should be awarded nor determined the date from which such interest would accrue. *See Dudley*, 313 F.3d at 671 (Sotomayor, J., concurring). In any case, the result would be the same under either provision.

accumulate over a twelve-year period, the Court finds that the circumstances are such that it can and should provide the relief Defendant seeks under Rule 60(b)(1) to include a prejudgment interest calculation.[5]

Section 5001 of the New York Civil Practice Law and Rules ("C.P.L.R.") provides that a party is entitled to prejudgment interest from the date of the accrual of the cause of action until the date of the verdict or judgment and directs the court to set the date from which to compute the interest. *See* N.Y. C.P.L.R. §§ 5001-5002. The parties in this case agree that the date from which prejudgment interest began to accrue was October 22, 1999, and that interest should run until October 13, 2011, the date on which the Court entered the Judgment. Thus, the Court will calculate prejudgment interest from October 22, 1999, until October 13, 2011.

The C.P.L.R. generally mandates a nine percent interest rate, "except where otherwise provided by statute." N.Y. C.P.L.R. § 5004. One such statutory exception relates to judgments against municipal corporations, including cities. *See* N.Y. Gen. Mun. Law § 3-a(3). New York General Municipal Law § 3-a(1) provides only that "the rate of interest to be paid by a municipal corporation upon any judgment or accrued claim against the municipal corporation shall not exceed nine per centum per annum." N.Y. Gen. Mun. Law § 3-a(1). Using nearly identical language, New York State Finance Law § 16 provides that "[t]he rate of interest to be paid by the state upon any judgment or accrued claim against the state shall not exceed nine per centum per

---

[5] By entering an amended judgment and/or finalizing the Judgment, the Court will resolve this matter, and this case will be ripe for review on the merits because, pursuant to Federal Rule of Appellate Procedure 4(a)(2), "'a premature appeal taken from an order which is not final but which is followed by an order that is final may be regarded as an appeal from the final order in the absence of a showing of prejudice to the other party.'" *Fed. Sav. & Loan Ins. Corp. v. Quality Inns, Inc.*, 876 F.2d 353, 358 (4th Cir. 1989) (quotation omitted).

annum." N.Y. State Fin. Law § 16. Under New York State Finance Law § 16, the New York Court of Appeals has explained that the burden is on the municipal defendant to rebut the presumption that the nine percent statutory prejudgment interest rate is reasonable. *See Denio v. State of New York*, 7 N.Y.3d 159, 168 (2006) (citations omitted). "To rebut the presumption of reasonableness . . . the [defendant] bears the burden of proffering substantial evidence that rates of return on both public and private investments during the relevant period are below nine percent . . . ." *Id.* (citations omitted). If and when the defendant rebuts this presumption, the plaintiff "has the burden of coming forward with evidence tending to show that a higher rate, up to the statutory maximum, is reasonable." *Id.* (footnote omitted).[6]

"When faced with opposing parties' interest rate evidence, a trial court must weigh the evidence to determine an appropriate rate in the exercise of its discretion. Ordinarily, in weighing the evidence, the court may find a range of reasonable rates" and the rate the court selects need only be "supported by a rational view of the evidence[.]" *Id.* In this case, Plaintiff and Defendant have submitted conflicting declarations regarding the rate that the Court should apply; Plaintiff asks the Court to implement a nine percent interest rate, and Defendant seeks the application of an interest rate lower than nine percent.

In his declaration in support of Plaintiff's position, Edward F. Saroney, CPA/ABV, CVA, stated that his analysis of reasonably prudent public and private securities investments during the relevant time period of October 22, 1999, through October 13, 2011, showed that the nine percent prejudgment interest rate is reasonable and appropriate here. *See generally* Dkt. No. 158-

---

[6] The parties agree that this is the appropriate burden-shifting framework that the Court should apply pursuant to New York General Municipal Law § 3-a.

5, Declaration of Edward F. Saroney, III, CPA/ABV, CVA, dated March 6, 2012. Of the numerous indices that Saroney used, he "selected the very conservative Barclays US Aggregate Gov't Treasury Long of 9.45% as the rate of return for the relevant timer period" to support his conclusion that Plaintiff is entitled to receive a nine percent prejudgment interest rate. *See id.* at ¶ 44. Saroney also criticized the declaration Defendant's CPA, Christopher P. Anderson, submitted because it provided too few benchmarks as representative rates of return that one might expect from prudent investments over the relevant time period. *See id.* at ¶¶ 11-12. Saroney further asserted that Anderson "cherry picked" investment vehicles and indices with low rates of return in an effort to obtain Defendant's desired result, that is, a low interest rate.

Christopher P. Anderson, CPA, stated in his declaration on Defendant's behalf that the following investment vehicles and indices are representative of rates of return that one might expect from prudent investments available for the relevant time period: (1) S&P 500 at 2.75%; (2) U.S. Treasury 3-Month Constant Maturity at 2.41%; (3) U.S. Treasury 20-Year Constant Maturity at 4.90%; and (4) Prime Rate at 5.62%; and (5) S&P with negative return at 0.85%. *See* Dkt. No. 155-6, Declaration of Christopher P. Anderson, CPA, dated February 6, 2012, at ¶¶ 9-11. Defendant requests that the Court calculate prejudgment interest at a rate between .85% and 5.69%.

The benchmark rates of return on public and private investments that Anderson provided seem to be a fair assessment of investment markets on the whole. Defendant has presented evidence that, during the relevant time period of October 22, 1999, until October 13, 2011, investments generally yielded a rate of return lower than nine percent. The burden then shifts to Plaintiff to come forward with evidence tending to show that a higher rate, up to nine percent, is

reasonable. In his declaration submitted on Plaintiff's behalf, Saroney does provide evidence that investments during the relevant time period could have generated interest at or around nine percent. However, contrary to Saroney's contention that nine percent is a fair interest rate, his own declaration evidences that many investment funds and indices returned a rate far less than nine percent during the relevant time period. *See* Dkt. No. 158-7. Indeed, in its reply memorandum of law, Plaintiff points out that the average rate of return for the all of the indices Saroney listed is only 3.43%. *See* Dkt. Nos. 160 at 6 & 160-2 at ¶¶ 3-4. Finally, in putting together three hypothetical prudent investment portfolios, Saroney selectively relied on only the highest-performing benchmarks out of the numerous investment vehicles and indices provided. *See* Dkt. Nos. 158-7 & 158-8.

In what appears to be a more fairly representative fully-diversified hypothetical portfolio, Anderson provided a portfolio using investments that Russell Investments used for "moderately risk-aversive investors," during the relevant time period, and arrived at an average annualized return of 4.72%. *See* Dkt. Nos. 160-2 at ¶ 8 & 160-3.

The Court finds that the nine percent prejudgment interest rate would be unreasonably high as it would produce a windfall for Plaintiff. As such, in its discretion, the Court will apply a prejudgment interest rate of 4.72% to calculate prejudgment interest for the period of October 22, 1999, through October 13, 2011. The Court finds that this constitutes a fair and reasonable rate of return during the time period at issue.

## IV. CONCLUSION

Accordingly, having reviewed the entire record in this matter, the parties' submissions

and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for a stay of the money Judgment pending appeal is **GRANTED** on the condition that Defendant posts a *supersedeas* bond in the amount of $5,312,678.00, the full amount of the Judgment, plus an additional 11% to cover interest and any damage for delay plus $250 to cover costs; and the Court further

**ORDERS** that Defendant's motion to amend the Judgment is **GRANTED** insofar as the Court's Judgment dated October 13, 2011, shall be amended to reflect a prejudgment interest rate of 4.72%, which shall be applied to the period of October 22, 1999, through October 13, 2011.

**IT IS SO ORDERED.**

Dated: August 2, 2012
       Syracuse, New York

                            Frederick J. Scullin, Jr.
                            Senior United States District Court Judge